2013 CO 6

L.A.N., a/k/a L.A.C., by and through her Guardian ad Litem, and The People of the State of Colorado, In the Interest of Minor Child: L.A.N., a/k/a L.A.C., Petitioners

v.

L.M.B., Respondent.

No. 11SC529.

Supreme Court of Colorado, En Banc.

Jan. 22, 2013.

Denver Department of Human Services, Douglas J. Friednash, Denver City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, Attorneys for Petitioner the People of the State of Colorado.

Packer Law Firm, LLC, Amy J. Packer, Littleton, Colorado, Attorneys for Petitioner Guardian ad Litem.

Pickard & Associates, P.C., Joe Pickard, Kerry Simpson, Justin Ross, Littleton, Colorado, Attorneys for Respondent.

Colorado Office of the Child's Representative, Sheri M. Danz, Amanda Donnelly, Denver, Colorado, Attorneys for Amicus Curiae Office of the Child's Representative.

Justice RICE delivered the Opinion of the Court.

¶ 1 In this parental rights termination case, we hold that the guardian ad litem ("GAL") is in the best position to waive the child's psychotherapist-patient privilege in a dependency and neglect proceeding when:

(1) the child is too young or otherwise incompetent to hold the privilege; (2) the child's interests are adverse to those of his or her parent(s); and (3) section 19–3–311, C.R.S. (2012), does not abrogate the privilege. We therefore affirm the court of appeals' holding that the GAL in this case held the child's ("L.A.N.'s") psychotherapist-patient privilege.

¶ 2 In addition, we hold that the court of appeals correctly determined that the GAL partially waived L.A.N.'s psychotherapist-patient privilege when she disseminated a letter from the child's therapist to the juvenile court and to all of the parties. Nevertheless, we disagree with the procedure the court of appeals described for determining the scope of that waiver. Therefore, we remand to the court of appeals with instructions to remand to the juvenile court to determine the scope of the waiver in accordance with this opinion.

## I. Facts and Procedural History

¶ 3 Children's Hospital staff contacted the Denver Department of Human Services ("DDHS") on December 9, 2008, after then seven-year-old L.A.N.'s mother, L.M.B. ("Mother"), brought L.A.N. to the hospital as a result of L.A.N.'s out-of-control behavior and suicidal statements. Mother attempted to flee with L.A.N. when hospital staff told Mother that they were considering transferring L.A.N. to a mental health facility.

¶ 4 On December 12, 2008, DDHS filed a petition in dependency and neglect regarding L.A.N. in the Denver juvenile court. The juvenile court appointed a GAL to represent L.A.N.'s best interests. DDHS placed L.A.N. in the care of her aunt while the action remained pending. After Mother made a no-fault admission to the dependency and neglect petition, the juvenile court adjudicated L.A.N. dependent and neglected as to Mother on March 11, 2009. A month later, the juvenile court adopted a treatment plan for Mother that required her to, among other things, secure lawful income, secure housing, and undergo psychological treatment and evaluation.

¶ 5 L.A.N. remained with her aunt after the juvenile court's March 2009 adjudication.

The aunt hired a licensed professional counselor, Kris Newland, to provide therapy for L.A.N. beginning in April 2009. L.A.N. continued in therapy with Newland after moving into her grandparents' home later that year.

¶ 6 On February 18, 2010, Newland wrote a letter to the GAL assessing L.A.N.'s progress. The letter contained a number of Newland's specific observations from her therapy sessions with L.A.N. For example, Newland expressed "[c]oncern about [the parent's] level of anger that I have heard about from [L.A.N.] and witnessed myself in the courtroom after the court hearings." She additionally quoted L.A.N. directly several times, including statements such as, "Mommy hurts bodies," and "I'm fine with visits at Mommy's house as long as I don't have to go alone."

¶ 7 Without expressly waiving or mentioning the psychotherapist-patient privilege contained in subsection 13–90–107(1)(g), C.R.S. (2012), the GAL distributed Newland's letter to the juvenile court and to all of the parties. On June 17, 2010, DDHS moved the juvenile court to terminate the parent-child relationship between Mother and L.A.N. on account of Mother's alleged failure to adequately comply with her court-prescribed treatment plan. On June 28, 2010, Mother's counsel subpoenaed Newland to appear for a deposition and to produce her entire case file in connection with the termination motion. Newland's counsel filed a motion to quash the subpoena and stated therein that the therapist-patient privilege of subsection 13–90–107(1)(g) protected Newland's records from disclosure.

¶ 8 After a hearing on the motion, the juvenile court granted the motion to quash as to the records, but denied it as to the deposition. In both written and oral findings, the juvenile court determined that neither L.A.N. nor Mother could waive L.A.N.'s psychotherapist-patient privilege. Instead, it found that the juvenile court itself had the authority to authorize a limited waiver of L.A.N.'s privilege because the court allowed and encouraged Newland to report to the court regarding L.A.N.'s therapy. The juvenile court balanced the risks of disclosing Newland's records—and thereby damaging the therapeutic relationship between Newland and L.A.N.—against Mother's interest in putting on a sufficient case to protect her parental rights. It concluded that Mother's counsel could depose Newland, but that Newland should not disclose her notes, video tapes, or personal records because doing so would be "clearly beyond the scope of any limited waiver" of L.A.N.'s privilege. Mother's counsel deposed Newland on August 13, 2010.

¶ 9 The case proceeded to a trial before the juvenile court. Newland testified in her expert capacity as L.A.N.'s therapist. During cross-examination, Mother's counsel again requested that the juvenile court order Newland to produce her case file. Reiterating the findings from its July 15, 2010, order that protected the file, the juvenile court once more determined that Newland's disclosure of information to assist the court constituted a limited waiver of L.A.N.'s therapist-patient privilege, but that this waiver did not include the documents Mother requested.

¶ 10 On November 3, 2010, the juvenile court terminated the parent-child relationship between Mother and L.A.N. Mother appealed the termination order to the court of appeals on several grounds, including that the juvenile court erred when it denied Mother's request for production of Newland's case file. The court of appeals determined that Mother was entitled to at least a portion of Newland's file because the GAL partially waived L.A.N.'s psychotherapist-patient privilege when she disseminated Newland's letter. *People ex rel. L.A.N.*, 296 P.3d 126, 131–32, 2011 WL 2650589 (Colo.App.2011). As such, the court of appeals opined that the juvenile court's denial of Mother's access to Newland's file deprived Mother of a fundamentally fair opportunity to protect her parental rights. *Id.* It therefore reversed the order of the juvenile court. *Id.* at 135.

¶ 11 The GAL and DDHS petitioned this Court for certiorari review of the court of appeals' opinion. We granted certiorari to determine: (1) whether a GAL in a dependency and neglect proceeding can waive the child's psychotherapist-patient privilege; and (2) whether the court of appeals erred in determining that L.A.N.'s psychotherapist-

patient privilege was waived with respect to certain materials in Newland's file.

## II. Analysis

¶ 12 We first describe the psychotherapist-patient privilege and discuss its application in dependency and neglect cases. Next, we explain why the GAL holds the child's privilege in a dependency and neglect case when neither the child nor the child's parent(s) have such authority. Finally, we outline the privilege log and balancing procedures that the juvenile court shall apply on remand to determine the scope of the GAL's waiver of L.A.N.'s psychotherapist-patient privilege.

## A. The Therapist–Patient Privilege in Dependency and Neglect Proceedings

¶ 13 We first review subsection 13–90–107(1)(g) and the dependency and neglect provisions of the Children's Code, sections 19–3–100.5 to 19–3–703, C.R.S. (2012), de novo to determine how the psychotherapist-patient privilege applies in the dependency and neglect context. *See Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006) (statutory interpretation presents a question of law that this Court reviews de novo).

¶ 14 The psychotherapist-patient privilege statute states that a psychotherapist "shall not be examined without the consent of the [patient] as to any communication made by the [patient] to the [therapist]." § 13–90–107(1)(g). The purpose of this provision is to preserve the "atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears" necessary for effective psychotherapy. *Jaffee v. Redmond*, 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996); *see People v. Sisneros*, 55 P.3d 797, 800 (Colo.2002); *Bond v. Dist. Court*, 682 P.2d 33, 38 (Colo.1984). Juvenile patients in particular require the privacy protection provided by the psychotherapist-patient privilege due to the sensitive nature of children's mental health care. *See Dill v. People*, 927 P.2d 1315, 1321 (Colo.1996) (describing the importance of the psychothera-pist-patient privilege in the child sexual assault context).

¶ 15 The psychotherapist-patient privilege shields communications between the therapist and the patient from disclosure and also prevents pretrial discovery of files or records derived from or created during the course of ongoing mental health treatment. *Sisneros*, 55 P.3d at 800; *Dill*, 927 P.2d at 1321. If not otherwise abrogated by statute, the privilege applies absent an express or implied waiver by the privilege holder. § 13–90–107(1)(g) (privileged information cannot be disclosed "without the consent" of the privilege holder); *see Clark v. Dist. Court*, 668 P.2d 3, 9 (Colo.1983). Waiver occurs if the evidence shows that the privilege holder "by words or conduct, has expressly or impliedly forsaken his claim of confidentiality with respect to the information in question." *Sisneros*, 55 P.3d at 801 (quoting *Clark*, 668 P.2d at 8).

¶ 16 Having generally described the psychotherapist-patient privilege, we now determine how this privilege applies in the dependency and neglect context by examining the relevant portions of the Children's Code. Article 3 of the Children's Code governs dependency and neglect proceedings. *See* §§ 19–3–100.5 to 19–3–703. Section 19–3–311 specifically abrogates the psychotherapist-patient privilege with respect to communications between a client and a licensed mental health professional that form the basis of a report of child abuse or neglect under section 19–3–304. Aside from section 19–3–311, the dependency and neglect provisions are silent regarding the psychotherapist-patient privilege. As such, if communications between a child-patient and his or her psychotherapist do not form the basis of a report of child abuse or neglect as described in section 19–3–304, then the psychotherapist-patient privilege applies to those communications in a dependency and neglect proceeding. *See People v. Dist. Court*, 743 P.2d 432, 434 (Colo.1987).

¶ 17 In this case, Newland provided L.A.N. with ongoing therapy beginning in April 2009 after the juvenile court adjudicated L.A.N. dependent and neglected as to Mother. Newland and L.A.N. therefore have a psy-

chotherapist-patient relationship subject to the privilege contained in subsection 13–90–107(1)(g). The notes and other documents in Newland's file for L.A.N. did not form the basis of a report of child abuse or neglect under section 19–3–304. Therefore, L.A.N.'s psychotherapist-patient privilege was not abrogated by section 19–3–311. Accordingly, Newland's records derived from or created during the course of her ongoing treatment of L.A.N were protected from pretrial discovery and testimonial disclosure under subsection 13–90–107(1)(g) unless the privilege holder expressly or impliedly waived the privilege. *See Sisneros,* 55 P.3d at 801.

¶ 18 Having determined that a privileged relationship subject to subsection 13–90–107(1)(g) exists between Newland and L.A.N., we now explain why the GAL holds L.A.N.'s psychotherapist-patient privilege in this case before examining the waiver issue.

### B. The GAL Holds the Privilege

¶ 19 Subsection 13–90–107(1)(g) does not specify who holds a child's psychotherapist-patient privilege in a dependency and neglect proceeding. In general, however, Colorado courts have recognized that the patient holds the privilege. *See, e.g., People v. Wittrein,* 221 P.3d 1076, 1083–84 (Colo. 2009) (patient held her own psychologist-patient privilege). When the patient is a child who is too young or otherwise incompetent to hold the privilege, the child's parent typically assumes the role of privilege holder.[1] *See, e.g., id.* at 1084 n. 6 (noting that the mother of an eight-year-old child had expressly waived the child's privileges relating to treatment provider's records); *Lindsey v. People,* 66 Colo. 343, 355, 181 P. 531, 536 (1919) ("[T]he proper person to claim or waive the privilege as to a minor is the natural guardian of such minor—in this case his mother." (citation omitted)).

¶ 20 The parent, however, cannot hold the child's psychotherapist-patient privilege when the parent's interests as a party in a proceeding involving the child might give the parent incentive to strategically assert or waive the child's privilege in a way that could contravene the child's interest in maintaining the confidentiality of the patient-therapist relationship. *See People v. Marsh,* —— P.3d ——, ——, 2011 WL 6425492 (Colo.App.2011) ("[T]he nature of a conflict between the interests of a parent and of his or her child may preclude the parent from waiving the child's psychologist-patient privilege."); *see also Attorney ad Litem v. Parents of D.K.,* 780 So.2d 301, 307 (Fla.Dist.Ct.App.2001) ("Where the parents are involved in litigation themselves over the best interests of the child, the parents may not either assert or waive the privilege on their child's behalf."); *In re Zappa,* 6 Kan.App.2d 633, 631 P.2d 1245, 1251 (1981) (parent cannot assert or waive the child's privilege in a termination of parental rights case); *In re Berg,* 152 N.H. 658, 886 A.2d 980, 988 (2005) (warning that parents could waive or assert the child's therapist-patient privilege for reasons unconnected to the child's interests in a child custody dispute).

¶ 21 The question of who holds the child's psychotherapist-patient privilege in a dependency and neglect case when neither the child nor the parent has such authority remains unsettled in Colorado. As such, we now discuss whether the authority to assert or waive the privilege in this type of case should lie with the department of human services, the juvenile court, or the GAL.[2]

¶ 22 The county department of human services should not hold the child's psychotherapist-patient privilege because its duties could conflict with the child's interest in maintaining the confidentiality of therapeutic communications. For example, the department of human services has exclusive authority to

---

1. We do not address the criteria that juvenile courts should employ to determine whether a child is old enough or otherwise competent to hold his or her own privilege in this case because that issue is not squarely before the Court. None of the parties in this case assert that L.A.N. holds her own psychotherapist-patient privilege.

2. While other people or entities might participate in some dependency and neglect proceedings, the parties do not assert that anyone other than the juvenile court, the department of human services, or the GAL should hold the privilege when neither the child nor the child's parent(s) have such authority. Therefore, we limit our analysis to these three potential privilege holders.

initiate dependency and neglect proceedings. *L.G. v. People,* 890 P.2d 647, 654 (Colo.1995). Therefore, unlike the GAL whose sole obligation is to advocate on behalf of the child's best interests during a dependency and neglect proceeding, the department of human services participates as an adversarial party in defending its dependency and neglect petition. If vested with the authority to hold the child's psychotherapist-patient privilege, the department of human services, like the parent as discussed above, could assert or waive that privilege as part of its litigation strategy. While strategic assertion or waiver of the privilege could advance the department of human service's position that that the child is dependent and neglected, such action could also damage the child's beneficial relationship with his or her therapist. This tension between the department of human services' duty to diligently bring its case and its duty to further the best interests of the child illustrates why the department of human services should not hold the child's privilege in a dependency and neglect case when neither the child nor the parent(s) have such authority.

¶ 23 Likewise, the juvenile court is not in the best position to hold the child's psychotherapist-patient privilege for several reasons. First, the juvenile court's role in a dependency and neglect proceeding, as in other types of cases, is that of independent decision-maker. *See People v. Romero,* 694 P.2d 1256, 1266 (Colo.1985) (stating that court should not deviate from its role as impartial arbiter). Among other obligations stemming from this role, the juvenile court independently reviews and decides the parties' discovery motions. These motions—like the motion to quash Mother's subpoena of Newland's file in this case—on occasion ask the juvenile court to objectively decide privilege-related issues. Requiring the juvenile court to both hold the child's psychotherapist-patient privilege, and objectively review and decide privilege-related discovery issues, could undermine the juvenile court's objective review function by injecting the juvenile court's subjective opinion regarding the child's privilege into what should be a purely objective calculus. The interest in preserving the juvenile court's objectivity in reviewing and deciding discovery issues demonstrates why the juvenile court is not in the best position to hold the child's psychotherapist-patient privilege.

¶ 24 Similarly, although the juvenile court must consider the child's best interests throughout the dependency and neglect proceeding, *see, e.g.,* section 19–3–604(3), C.R.S. (2012) (requiring court at termination hearing to "give primary consideration to the physical, mental, and emotional conditions and needs of the child"), its role is not to *represent* the best interests of the child. That advocacy function rests with the GAL. *See* § 19–3–203(3); Chief Justice Directive 04–06 § V.B (Dec. 2011). Therefore, although the juvenile court must render its decisions with the best interests of the child in mind, it is not in an ideal position to assert or waive the child's psychotherapist-patient privilege due to its position as an independent decision-maker rather than as an advocate.

¶ 25 Finally, the obligation to assert or waive the child's psychotherapist-patient privilege could unduly burden the juvenile court and would constitute a wasteful allocation of resources. The juvenile court would likely have to review a vast amount of information provided by the psychotherapist to determine whether, and to what extent, to waive the child's psychotherapist-patient privilege. This review process could significantly slow down juvenile proceedings and thereby increase the burden on the juvenile courts' already-overloaded dockets. Additionally, by serving as the child's privilege holder, the juvenile court would likely duplicate the GAL's work by reviewing and assessing information from the psychotherapist. *See* § 19–3–203(3) (GAL must investigate the case, question witnesses, and make recommendations to the court concerning the child's welfare); Chief Justice Directive 04–06 § V.D.4 (directing the GAL to "[c]onduct an independent investigation"). This duplication of efforts would constitute a waste of scarce state resources. Thus, the juvenile court is not in the best position to hold the child's psychotherapist-patient privilege.

¶ 26 Having determined that neither the department of human services nor the juvenile court should hold the child's psychotherapist-patient privilege when both the child and the child's parent lack the authority to do so, we now analyze whether the GAL is in the best position to hold the child's privilege, and conclude that he or she is. The GAL's "client" is the "best interests of the child." § 19–3–203(3); Chief Justice Directive 04–06 § V.B. The GAL's ethical obligations as an attorney "flow from this unique definition of 'client' "; therefore, the GAL owes fiduciary duties of loyalty and confidentiality to the child's best interests. Chief Justice Directive 04–06 § V.B.; *see* Colo. RPC 1.6 (duty of confidentiality); Colo. RPC 1.7 cmt. 1 ("[L]oyalty and independent judgment are essential elements in the lawyer's relationship to a client."). These professional duties serve the privacy interest of the psychotherapist-patient privilege that the General Assembly aimed to protect with subsection 13–90–107(1)(g) because the GAL must refrain from revealing privileged information if doing so would be contrary to the child's best interests. *See Sisneros,* 55 P.3d at 800.

¶ 27 In addition, unlike the other potential privilege holders discussed above, the GAL is in an optimal position to understand when to assert or waive the child's privilege in order to serve the child's best interests due to the nature of the GAL's statutory duties. Colorado law requires the juvenile court to appoint a GAL in every dependency and neglect case. § 19–1–111(1), C.R.S. (2012); Chief Justice Directive 04–06 § III.A. Therefore, the GAL is consistently available to hold the child's privilege when neither the child nor the child's parent(s) have such authority. To represent the child's best interests, the GAL must investigate the case, question witnesses, and make recommendations to the court concerning the child's welfare. *See* § 19–3–203(3). The GAL accomplishes these tasks in part by interviewing people involved in the child's life, including therapists. Chief Justice Directive 04–06 § V.D.4.e. The knowledge gained by fulfilling these obligations places the GAL in the best position to determine what information to disclose in the best interests of the child. Therefore, the GAL should hold the child's privilege when neither the child nor the child's parent(s) have authority to do so.

¶ 28 We now turn to the second issue before us on certiorari review: whether the court of appeals erred in determining that L.A.N.'s psychotherapist-patient privilege was waived with respect to certain materials in Newland's file.

### C. Waiver

¶ 29 We hold that the court of appeals correctly determined that the GAL waived L.A.N.'s psychotherapist-patient privilege to at least some of the information in Newland's file. The scope of this waiver, however, remains at issue. In reviewing this waiver issue, we defer to the juvenile court's findings of fact if they are supported by the evidence, and we review conclusions of law made by the juvenile court and by the court of appeals de novo. *In re B.J.,* 242 P.3d 1128, 1132 (Colo.2010).

¶ 30 As noted above, the psychotherapist-patient privilege prevents disclosure of privileged information "without the consent" of the privilege holder. § 13–90–107(1)(g); *Sisneros,* 55 P.3d at 800; *Clark,* 668 P.2d at 9. Consent, or waiver, occurs if the evidence shows that the privilege holder "by words or conduct, has expressly or impliedly forsaken his claim of confidentiality with respect to the information in question." *Sisneros,* 55 P.3d at 801 (quoting *Clark,* 668 P.2d at 8).

¶ 31 The court of appeals correctly determined as a matter of law that the GAL at least partially waived L.A.N.'s psychotherapist-patient privilege when she disseminated Newland's letter. *People ex rel. L.A.N.,* —— P.3d at ——. The GAL had no obligation to disclose the letter itself to comply with her duty to "provide accurate and current information directly to the court," Chief Justice Directive 04–06 § V.D.1., or to comply with her duty to make recommendations to the juvenile court concerning L.A.N.'s welfare, section 19–3–203(3). The GAL could have conveyed Newland's opinions to the juvenile court in a number of ways apart from distributing Newland's entire letter. By opting to disseminate the letter, the GAL waived L.A.N.'s psychotherapist-patient privilege as

to the letter's contents. The scope of the waiver with respect to information related to the letter, however, remains at issue.

### 1. Procedure for Determining the Scope of the Waiver

¶ 32 The question of how the juvenile court should determine the scope of a GAL's waiver of a child's psychotherapist-patient privilege in a dependency and neglect proceeding is one of first impression before this Court. We adopt the following procedure in the juvenile context.[3] First, after the juvenile court determines that the GAL waived the child's privilege, it will decide whether the scope of that waiver is readily apparent by considering the words or conduct that waived the privilege. If the scope is readily apparent, then the juvenile court may exercise its discretion and order disclosure of the evidence subject to the waiver. If the scope is not readily apparent, then the juvenile court will instruct the GAL to compile a privilege log with the help of the psychotherapist that identifies the documents that the GAL believes should remain subject to the privilege despite the waiver. *See Alcon v. Spicer*, 113 P.3d 735, 742 (Colo.2005) (describing privilege log procedure). The privilege log will explain why each document should remain privileged and must describe each document in enough detail to allow the juvenile court and the other parties to sufficiently assess the privilege claims. *Id.* (citations omitted). If, however, the juvenile court or any of the parties contend that the privilege should not apply to any of the communications listed in the privilege log, then the juvenile court may perform an *in camera* inspection of the documents at issue. *Id.* (citations omitted); *Sisneros*, 55 P.3d at 800 (trial court may order the documents potentially subject to waiver produced for *in camera* inspection).

¶ 33 After receiving the privilege log and performing any necessary *in camera* inspection of the listed documents, the juvenile court will determine the scope of the waiver by balancing the competing interests surrounding disclosure. *See Bond*, 682 P.2d at 40 (applying balancing test to determine the scope of a waiver of privilege). On the one hand, maintaining the psychotherapist-patient privilege encourages and protects the patient's privacy in seeking mental health treatment. *Id.* at 38 (citing *People v. Taylor*, 618 P.2d 1127, 1140 (Colo.1980)). Disclosing information obtained during therapy sessions could damage the trust the patient has for the therapist and for the therapeutic process generally. *Id.* at 39–40; *Clark*, 668 P.2d at 8. This concern is particularly pronounced in cases involving children due to the sensitive nature of treating children's mental health. *See Dill*, 927 P.2d at 1321. Thus, strong policy reasons support keeping records derived from a child's ongoing therapy sessions confidential. *See Bond*, 682 P.2d at 39–40.

¶ 34 On the other hand, compelling policy considerations encourage disclosure of pertinent information during discovery. For example, disclosure might satisfy a party's, like a parent's, need to obtain information essential to a claim or defense. *See Clark*, 668 P.2d at 9. In addition, disclosure can eliminate surprise at trial, bring forth relevant evidence, simplify the issues, and promote expeditious resolution of the case. *Silva v. Basin W., Inc.*, 47 P.3d 1184, 1188 (Colo. 2002) (citing *Bond*, 682 P.2d at 40). Moreover, the juvenile court may benefit from the disclosure of otherwise-privileged information from the child's psychotherapist by using that information to form its recommendations and decisions regarding the child's welfare. *See In re Kristine W.*, 94 Cal.

---

**3.** We disagree with the court of appeals' instructions to the trial court and to the parties on remand. *See People ex rel. L.A.N.*, 296 P.3d at 135. The court of appeals directed the parties to confer to determine whether they could agree to allow the juvenile court to decide the case on the basis of the evidence that would remain after excluding all information from the therapist. *Id.* If they so agreed, then the juvenile court was to make new findings on the basis of the remaining evidence. *Id.* If they did not agree, then the court of appeals directed the juvenile court to conduct an *in-camera* review of the therapist's file to identify the portions of the file that the court of appeals held were discoverable while considering any arguments from the parties regarding the scope of the waiver. *Id.* Finally, the court of appeals directed the juvenile court to order Newland to provide Mother with the discoverable portions of her file. *Id.*

App.4th 521, 527, 114 Cal.Rptr.2d 369 (Cal. Ct.App.2001).

¶ 35 A juvenile court tasked with determining the scope of a GAL's waiver of the child's psychotherapist-patient privilege in a dependency and neglect case must accordingly weigh the benefits of maintaining the privilege and protecting information potentially subject to the waiver against the benefits of disclosing certain information, all the while keeping in mind its overarching duty to further the best interests of the child. It may use the following discretionary factors, among any other considerations particular to the facts of the case, to guide its balancing analysis:

1. The best interests of the child and the impact of the waiver on the child;

2. The parent(s)' due process rights and ability to adequately respond to the information provided by the psychotherapist;

3. The impact of disclosure on any applicable permanency plan—for example, a permanency goal of reunification would weigh against divulging information that could potentially damage the parent-child relationship;

4. The significance of the information to be disclosed and its impact, if any, on the case;

5. Whether the information potentially subject to disclosure is available from any other source, especially one that has already been disclosed or is less problematic to disclose;

6. The procedural posture of the proceeding; and

7. The impact that disclosure might have on any other parties or people beyond the litigation—for example, siblings, therapists, or teachers.

¶ 36 Once the juvenile court balances the interests and determines the scope of the GAL's waiver, it should order disclosure of the communications subject to the waiver to all of the parties. The juvenile court will then honor the protection the psychotherapist-patient privilege provides to the communications not subject to the waiver and will not rely on any of those communications when making decisions in the case.

### 2. Application

¶ 37 The scope of the GAL's waiver in this case was not readily apparent because of the breadth of information in Newland's letter.[4] Therefore, on remand, the juvenile court shall first order the GAL to compile a privilege log with Newland's assistance describing the communications that the GAL believes should remain subject to L.A.N.'s psychotherapist-patient privilege despite the disclosure of the letter. The GAL shall submit the privilege log to the juvenile court and to all of the parties. Upon request by any party, or upon its own volition, the juvenile court may review any of the communications listed in the privilege log *in camera*. To determine the scope of the waiver, the juvenile court shall then balance the interests in maintaining the privilege against the interests supporting disclosure using the factors described above at its discretion to guide its analysis.

¶ 38 If the juvenile court determines, after balancing the interests, that the scope of the waiver differs from the juvenile court's original findings, then the juvenile court shall order Newland to disclose the communications for which the GAL waived L.A.N.'s privilege. In such an instance, the juvenile court shall then conduct a new termination hearing. In the event that a new termination hearing occurs, the juvenile court shall not consider any of the communications that remain subject to L.A.N.'s psychotherapist-patient privilege in rendering its termination decision.[5]

4. Newland's letter contained five single-spaced pages of information including quotes from L.A.N. that appear to have occurred during multiple therapy sessions, Newland's observations of L.A.N., Newland's observations of L.A.N.'s family members, analysis of L.A.N.'s progress, and Newland's recommendations for L.A.N.'s future.

5. The court of appeals remanded the portion of this case having to do with the Indian Child Welfare Act ("ICWA") to the juvenile court. Our instructions on remand do not conflict with the court of appeals' ICWA holding because the ICWA issue is not before this Court. As such, the juvenile court must still resolve the ICWA issue as instructed by the court of appeals.

## III. Conclusion

¶ 39 We conclude that the GAL holds the child's psychotherapist-patient privilege in a dependency and neglect proceeding when neither the child nor the child's parent(s) have such authority and the privilege is not abrogated by section 19–3–311. We further hold that the GAL in this case waived L.A.N.'s psychotherapist-patient privilege when she disclosed Newland's letter. The scope of that waiver remains at issue. Therefore, we remand to the court of appeals with instructions to remand to the juvenile court for proceedings consistent with this opinion.

Justice COATS dissents.

Justice COATS, dissenting.

¶ 40 Because I find the majority's opinion driven more by policy choices than by law, but also because I believe its quest to discover the "best position" to exercise a child's statutory privilege suffers from fundamental conceptual shortcomings, with the effect of actually devaluing the privilege, I respectfully dissent.

¶ 41 Unlike either the majority or intermediate appellate court, I believe the trial court was right in concluding that under our legal structure, in proceedings to determine whether (and if so, under what conditions) a respondent will be considered fit to continue to parent his or her child, the court alone can ultimately decide what is in the best interests of the child, and therefore the court alone can decide whether the child's secrets must be exposed in furtherance of those interests. Although the ultimate question will not yet have been decided, once a parent's fitness has been sufficiently challenged to limit his parental rights and responsibilities, his access to otherwise privileged materials necessary to carry out those responsibilities is clearly no longer required. By the same token, however, I find nothing in the statutory scheme to suggest that the legislature intended by the appointment of a guardian solely for purposes of this litigation to permit that guardian complete access to the child's otherwise legally protected secrets, much

less to divulge those secrets to others at his choice.

¶ 42 The legislature has created a privilege for communications made to a licensed therapist, running to the client, by expressly prohibiting the examination of a therapist about those communications without the client's consent. *See* § 13–90–107(1)(g), C.R.S. (2012). With regard to children in particular, the legislature has limited the privilege to the extent of requiring the therapist to report whenever there is reason to suspect a child has been subjected to abuse or neglect, § 19–3–304, C.R.S. (2012), and by making clear that the therapist-client privilege cannot be a ground for excluding from proceedings resulting from such a report any communications upon which the report is based or any discussion of future or other past misconduct that could be the basis for such a report. § 19–3–311, C.R.S. (2012). The legislature has not, however, specified circumstances under which a child should be considered incapable of giving or withholding consent for the release of communications that remain privileged, nor has it expressly authorized any person or agency to give consent for the child if the child were incapable of doing so himself.

¶ 43 In this regard, I find particularly problematic the majority's characterization of a statutorily appointed guardian ad litem as the "holder" of the child's privilege. I would not even characterize a parent or legal guardian, who is expressly granted access to certain otherwise confidential records and has legal obligations for the child's safety and welfare requiring him to make important decisions on behalf of the child, as the holder of the child's privilege. Even someone with parental responsibilities may act only in the interests of the child and does not become a person to whom the privilege runs and for whose benefit it exists. Not only do I believe the express and deliberate waiver of a child's privilege, even by one with uncontested parental responsibilities, may nevertheless be ineffective under certain circumstances; I believe the privilege of a child most certainly cannot be implicitly waived by acts of a parent that are not in the child's best interests, even though those acts would otherwise be

sufficient for an implied waiver of the parent's own privilege.

¶ 44 In addition to the obvious dearth of authority for an appointed guardian ad litem to command the child's privilege, I confess to being baffled by the majority's staunch objections to allowing the privilege to be overridden only by court order. Courts are constantly called upon to hear evidence preliminary to determining its admissibility and to review allegedly privileged communications in camera to determine their discoverability or admissibility. It seems particularly strained in the context of dependency and neglect proceedings, where the court has uncommonly broad authority to seek assistance and order evaluations of the child on its own, to limit the role of the court out of concern for maintaining its independence and objectivity. Where virtually every decision the court makes is already limited by consideration for the best interests of the child, and where the court must ultimately decide whether communications between the child and her therapist, despite not falling within the broad category of abuse or neglect singled out for disclosure by the legislature, are nevertheless sufficiently relevant to the question of dependency and neglect, or possibly actual termination of parental rights, I find it unconvincing to assign the power of disclosure, rather than to the court, to a guardian ad litem, appointed to assist the court in evaluating the child's best interests.

¶ 45 Finally, in light of the majority's reservation of the determination whether a child retains authority over her own privilege to the court, virtually without guideline or restriction, and its similar reservation of the determination of the scope of any waiver by the guardian ad litem, the practical effect of the majority's allocation of authority to the guardian ad litem remains for me somewhat unclear. If a guardian ad litem cannot be confident he is the holder of the privilege without a ruling by the court, and if any dispute over the scope of a waiver must ultimately be resolved by the court following in-camera review, even the majority's solution appears to leave the ultimate decision about disclosure in the hands of the court, excepting only where the guardian ad litem

is willing to divulge everything sought by the parties. And while the majority's prescription may permit a guardian ad litem to safely fashion agreements for disclosure among the parties without troubling the court (simply because there is likely to be no one left to object on the child's behalf), it is precisely this eventuality that I believe devalues the privilege intended by the legislature.

¶ 46 Nothing would preclude a guardian ad litem (after alert from the child's therapist) or the child's therapist himself from moving the court for an in camera review of communications the therapist suspects of having relevance, despite failing to suggest abuse or neglect. In that event, the court would merely be called upon to perform substantially the same functions required under the majority's proposal for every case lacking complete agreement of the parties and the guardian ad litem about the scope of waiver.

¶ 47 Because I believe there to be no good reason, in either law or logic, to bypass the court's review before allowing disclosure of the confidences of a child whose status is pending litigation, and a plethora of good reasons to require it, I respectfully dissent.