507 P.3d 1092
2022 COA 8
The PEOPLE of the State of Colorado, Appellee,
IN the INTEREST OF E.B., a Child,
and
Concerning R.B., Appellant.
Court of Appeals No. 21CA0346
Colorado Court of Appeals, Division VI.
Announced January 6, 2022
Rehearing Denied March 24, 2022
Kimberly S. Sorrells, Jefferson County Attorney, Sarah L. Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee
Jeffrey Koy, Jordan Oates, Lauren E. Dingboom, Claire Collins, Guardians Ad Litem
The Morgan Law Office, Kris P. Morgan, Colorado Springs, Colorado, for Appellant
Opinion by JUDGE WELLING
¶ 1 In this dependency and neglect proceeding, R.B. (father) appeals the juvenile court judgment terminating his parent-child legal relationship with E.B. (the child). Father contends that the juvenile court abused its discretion by denying his request for a continuance after it learned that he was having technical difficulties participating in the termination hearing, which was being conducted via videoconference. We agree that, under the facts and circumstances of this case, it was an abuse of discretion to deny the requested continuance, so we reverse the judgment and remand the case to the juvenile court for further proceedings.
I. Background
¶ 2 In January 2020, the Jefferson County Division of Children, Youth and Families initiated a dependency and neglect case and assumed temporary custody of the newborn 507 P.3d 1094 child. At that time, the child was being treated for opiate withdrawal and his umbilical cord had tested positive for a multitude of opiates as well as methamphetamine. Father entered an admission, and the juvenile court adjudicated the child dependent and neglected. Later, the Division moved to terminate the legal relationship between father and the child.
¶ 3 In February 2021, the juvenile court held a hearing on the Division's termination motion. Because of the ongoing COVID-19 pandemic, the juvenile court conducted the termination hearing via the Webex remote videoconference platform.
¶ 4 At the start of the hearing, father's counsel entered his appearance. At that time, counsel noted that father wasn't present but made no record as to why father was not personally participating in the hearing.
¶ 5 Midway through the hearing, however, the court alerted counsel that father may have been intermittently logging in to the hearing. The court then took a brief recess. Following the recess, the county attorney represented that the paternal grandfather had just let her know that father was trying to access the hearing.
¶ 6 At the request of father's counsel, the court then paused the proceeding so that counsel could have time to reach out to father. But counsel was unable to reach father and requested "to continue father's portion of th[e] case" so that he could have father testify at a later time. In doing so, counsel indicated that father had tried to contact him several times since being released from jail twelve days earlier. Counsel further explained that he hadn't been available when father called and had been unable to get back in touch with father because father had "a Wi-Fi phone," which meant that he could only be reached when he had access to Wi-Fi. Without explicitly ruling on father's counsel's request, the court resumed the hearing.
¶ 7 Father's counsel renewed his request for a continuance during closing argument. At that time, counsel asserted that he had learned from the paternal grandparents that father had tried to log in to the hearing, but he had been asked to leave the gas station where he was using the Wi-Fi. Counsel also reiterated that he wanted to present father's testimony.
¶ 8 The juvenile court denied father's request for a continuance. In denying father's motion, the court noted that it "cannot find a manifest injustice would occur if a continuance were not granted" and that it "can't find good cause for a continuance or that a continuance would be in [the child's] best interest." In support of its ruling, the court noted that "father's had ample opportunity to prepare to join today. I'm sorry he wasn't able to. But case law is clear. He's been represented by counsel throughout. So that motion ... is denied." The court then granted the Division's motion to terminate father's parental rights.
II. Analysis ¶ 9 Father contends that the juvenile court abused its discretion by denying his request to continue the termination hearing because he lacked internet access to appear and testify at the hearing via Webex. We agree that, under the circumstances of this case, the court's decision to deny father's request for even a brief continuance didn't afford father due process and, thus, was an abuse of discretion.
A. The Legal Framework ¶ 10 A parent has a fundamental liberty interest in the care, custody, and control of his or her child. Troxel v. Granville , 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). To protect the parental liberty interest, due process requires the court to provide fundamentally fair procedures to a parent facing termination. A.M. v. A.C. , 2013 CO 16, ¶ 28, 296 P.3d 1026 ; see also L.L. v. People , 10 P.3d 1271, 1276 (Colo. 2000). Due process is flexible and calls for such procedural protections as the situation demands. A.M. , ¶ 28. ¶ 11 Nonetheless, it requires that a parent receive adequate notice of a termination hearing and the opportunity to be heard and defend. People in Interest of Z.P.S. , 2016 COA 20, ¶ 40, 369 P.3d 814. Indeed, the due process safeguards of notice 507 P.3d 1095 and an opportunity to be heard at a meaningful time and in a meaningful manner are absolute. Patterson v. Cronin , 650 P.2d 531, 537 (Colo. 1982) ; see also People in Interest of R.J.B. , 2021 COA 4, ¶ 27, 482 P.3d 519. And the right to be heard includes affording the parent the right to cross-examine adverse parties and call his or her own witnesses. A.M. , ¶ 29. ¶ 12 Against this backdrop, the Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2021. When ruling on a motion to continue a termination hearing, the juvenile court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency. C.S. v. People in Interest of I.S. , 83 P.3d 627, 638 (Colo. 2004).
¶ 13 Because the child was under the age of six when the dependency and neglect petition was filed, the expedited permanency planning (EPP) provisions apply. See §§ 19-1-102(1.6), 19-1-123, C.R.S. 2021. In EPP cases, the court shall not delay or continue the termination hearing unless good cause is shown and the delay is in the child's best interests. §§ 19-3-104, 19-3-602(1), C.R.S. 2021. ¶ 14 A motion for a continuance is addressed to the juvenile court's discretion and we will not disturb its ruling on appeal absent an abuse of that discretion. C.S. , 83 P.3d at 638. A court abuses its discretion when its ruling is manifestly arbitrary, unfair, or unreasonable or when it misapplies the law. R.J.B. , ¶ 13.
B. Motion for Continuance
¶ 15 In denying father's request for a continuance, the court reasoned that father had been given ample opportunity to make arrangements to log in to the hearing. But we are unable to understand the basis for this conclusion given father's multiple unsuccessful attempts to communicate with his counsel during the twelve-day period between his release from custody and the termination hearing. ¶ 16 Additionally, this is not a case in which father was unavailable to participate in the termination hearing. To the contrary, the record reveals that he was making efforts to secure Wi-Fi access so that he could participate in the hearing. Yet, other than briefly pausing the hearing, the court didn't facilitate father's efforts to personally participate in this hearing. This is significant. As a division of this court has previously explained, holding a termination hearing via Webex affords a parent due process when, among other things, the court is willing to make accommodations to ensure that a parent who wants to personally participate in the hearing is able to do so. See R.J.B. , ¶¶ 32-33.
¶ 17 Finally, while we recognize that the child's best interests and need for permanency are key factors in deciding whether to continue a termination hearing, they must be considered in the context of the reason for the delay — affording father his due process right to be heard in a meaningful manner — and the length of the delay. The child and father shared an interest in avoiding the erroneous termination of father's parental rights. See Santosky v. Kramer , 455 U.S. 745, 760, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (recognizing that until the state proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship). Consequently, it was in the child's best interests to afford father due process. And, here, only a short delay was necessary to allow father and his counsel to arrange for him to personally participate in the hearing via Webex. Indeed, this was a one-witness termination hearing spanning just eighty-one pages of transcript from start to finish (including the court's ruling), and there's no indication anywhere in the record that a lengthy continuance would have been required to accommodate father's participation in the hearing.
¶ 18 For these reasons, we conclude that the juvenile court abused its discretion by denying father's request to continue the termination hearing. Accordingly, the termination judgment must be reversed.
507 P.3d 1096 C. Fitness to Parent
¶ 19 Father also contends that the juvenile court erred by determining that he could not become a fit parent within a reasonable time. Because we have already determined that the termination judgment must be reversed, we do not address this argument.
III. Conclusion
¶ 20 The judgment is reversed and the case is remanded to the juvenile court to reconsider the termination of father's parental rights. In reconsidering termination, the court must give father an opportunity to present his own testimony and may, in addition, also rely on the existing record.
JUDGE FOX and JUDGE JOHNSON concur.