521 P.3d 637
The PEOPLE of the State of Colorado, Petitioner,
IN the INTEREST OF Minor Child: E.B.,
and
E.B.
v.R.B., Respondent
Supreme Court Case No. 22SC213 Supreme Court of Colorado.
December 12, 2022
Attorneys for Petitioner The People of the State of Colorado: Jefferson County Attorney's Office, Claire M. Czajkowski, Assistant County Attorney, Golden, Colorado
Attorneys for Petitioner E.B.: Koy Dingboom Oates, LLC, Jeffrey C. Koy, Lauren Dingboom, Jordan Oates, Englewood, Colorado
Attorneys for Respondent: The Morgan Law Office, Kris P. Morgan, Colorado Springs, Colorado
Attorney for Amicus Curiae Colorado Office of the Child's Representative: Anna N. Ulrich, Denver, Colorado
Attorney for Amicus Curiae Colorado Office of Respondent Parents' Counsel: Zaven T. Saroyan, Denver, Colorado
En Banc
JUSTICE HOOD delivered the Opinion of the Court, in which JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined.
JUSTICE HOOD delivered the Opinion of the Court.
¶1 In this dependency and neglect case, we address whether respondent R.B.'s ("Father's") due process rights were violated when a juvenile court denied his request for a continuance of a parental-rights termination hearing. Although his counsel was present, technical difficulties prevented Father's virtual attendance at the hearing. Because Father has failed to show actual prejudice, we conclude that his claim fails. Therefore, we reverse the judgment of the court of appeals, vacate its opinion, and remand for further proceedings consistent with this opinion.
I. Facts and Procedural History
¶2 In January 2020, E.B. was born with codeine, hydromorphone, fentanyl, amphetamine, and methamphetamine in his bloodstream. Shortly after his birth, he was admitted to the neonatal intensive care unit ("NICU") for opiate-withdrawal treatment. Given this, the mother's admitted heroin use, and Father's appearance at the hospital under the influence, the Jefferson County Division of Children, Youth, and Families ("Division") initiated dependency and neglect proceedings and took temporary custody of E.B. Upon admissions by both parents, the court adjudicated E.B. dependent as to both parents.
¶3 After this adjudication, Father struggled in treatment. In May 2020, the juvenile court entered a family integrated treatment ("FIT") plan for Father, requiring him to address his ongoing substance abuse. By September, however, Father had largely failed to comply with the treatment plan and was discharged from FIT court for noncompliance with the program.
¶4 Father's failure in treatment prompted termination efforts. In October 2020, the Division moved to terminate Father's parental rights, and the juvenile court set a termination hearing for February 2, 2021. At a status conference in late January, which Father didn't attend, Father's counsel indicated he was ready to proceed with the termination hearing as scheduled.
¶5 Due to the COVID-19 pandemic, the February termination hearing was held via Webex's videoconferencing platform. At the start of the hearing, Father's counsel entered his appearance and informed the court that Father wasn't present; however, counsel didn't explain Father's absence.
¶6 During the hearing, the juvenile court questioned whether Father had attempted to log in to the hearing, citing the intermittent presence of a virtual participant with Father's name. Father's counsel explained that the unknown participant was E.B.'s paternal grandfather, who shares Father's name. After a brief recess, the Division's attorney informed the court that E.B.'s paternal grandfather had suggested that Father was attempting to access the hearing remotely. The attorney "want[ed] to make sure that if [Father was] trying to participate, that he [was] able to do so."
¶7 The court granted another brief recess to allow Father's counsel to contact Father, but counsel's efforts were unsuccessful. Counsel explained that Father had attempted to contact him several times since being released from jail approximately two weeks prior. He also noted that Father had a "Wi-Fi phone," which only functioned when connected to the internet and made contact with Father difficult. Counsel then requested "to continue respondent father's portion of this case" to give Father an opportunity to testify. The court instead chose to finish with the first witness and said it would "go from there." The court resumed the hearing.
¶8 After the Division finished presenting evidence, the court invited Father's counsel to call witnesses besides Father, but counsel declined.
¶9 During closing arguments, Father's counsel renewed his request for a continuance "to allow [Father] to testify." He added that E.B.'s paternal grandparents had notified him that Father had attempted to log in to the hearing but lost service after being asked to leave the gas station where he was using Wi-Fi.
¶10 The juvenile court denied the request. The court explained that it "cannot find a manifest injustice would occur if a continuance were not granted" and that it "can't find good cause for a continuance or that a continuance would be in [E.B.'s] best interest." The court supported this determination by explaining that Father "had ample opportunity to prepare to join today" and that he was "represented by counsel throughout."
¶11 The court then terminated Father's parental rights as to E.B.
¶12 On appeal, Father argued that the juvenile court had violated his due process rights by denying his request for a continuance. The court of appeals seemed to agree, concluding that the juvenile court abused its discretion. People in Int. of E.B., 2022 COA 8, ¶¶ 17–18, 507 P.3d 1092, 1095. Specifically, it focused on Father's attempts to communicate with his counsel before the termination hearing, noting that "the court didn't facilitate father's efforts to personally participate in this hearing." Id. at ¶¶ 15–16, 507 P.3d at 1095. The court of appeals also reasoned that while a "child's best interests and need for permanency are key factors" for determining whether to continue a termination hearing, these factors "must be considered in the context of the reason for the delay—affording father his due process right to be heard in a meaningful manner." Id. at ¶ 17, 507 P.3d at 1095. It reversed the juvenile court's termination order and remanded for further proceedings. Id. at ¶ 20, 507 P.3d at 1096.
¶13 The Division and E.B.'s guardian ad litem ("GAL") petitioned this court for review. We granted the petition.1 II. Analysis
A. Standard of Review ¶14 A trial court's ruling on a continuance motion "will not be disturbed on review in the absence of a clear abuse of discretion." C.S. v. People , 83 P.3d 627, 638 (Colo. 2004) (quoting People in Int. of M.M., 726 P.2d 1108, 1121 (Colo. 1986) ). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. Fisher v. People, 2020 CO 70, ¶ 13, 471 P.3d 1082, 1086. "The totality of the circumstances is relevant when determining whether the trial court committed an abuse of discretion by denying a continuance." People in Int. of D.J.P., 785 P.2d 129, 131 (Colo. 1990). B. Actual Prejudice ¶15 Both the Division and the GAL assert that because Father failed to demonstrate how his absence from the termination hearing created actual prejudice, his due process claim must fail. We agree. ¶16 The United States and Colorado Constitutions guarantee that the government shall not deprive any person of an interest in life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1 ; Colo. Const. art. II, § 25. Because "[p]arents have a constitutionally protected liberty interest in the care, custody, and management of their children," People in Int. of A.M. v. T.M., 2021 CO 14, ¶ 17, 480 P.3d 682, 686, the termination of the parent-child relationship must satisfy due process by providing "fundamentally fair procedures," People in Int. of J.G., 2016 CO 39, ¶ 20, 370 P.3d 1151, 1158 (quoting Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ). Under this principle, a parent must be provided with "notice of the allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination." A.M. , ¶ 18, 480 P.3d at 687. ¶17 However, "Colorado decisions have consistently recognized that a party may not obtain relief on an as-applied due process challenge absent a showing of harm or prejudice." People in Int. of N.A.T., 134 P.3d 535, 539 (Colo. App. 2006) ; see, e.g., Elec. Power Rsch. Inst., Inc. v. City & Cnty. of Denver , 737 P.2d 822, 828 (Colo. 1987) ("[T]here is no infringement of due process rights unless a party has been prejudiced by the procedure to which he objects."). Under this rule, a defendant arguing that a denial of a continuance violated due process must demonstrate that actual prejudice arose from the continuance's denial. See In re C.A.O. , 192 P.3d 508, 512 (Colo. App. 2008) ; People in Int. of J.A.S ., 160 P.3d 257, 262 (Colo. App. 2007). ¶18 "Where the trial court substantially complies with the [termination] statute, there is a presumption of no prejudice to a parent in a termination hearing." C.S. , 83 P.3d at 631. Neither party expressly asserts that the juvenile court failed to substantially comply with the statutory termination procedure. Therefore, with this presumption of no prejudice in mind, we turn to the criteria for termination to assess prejudice.
¶19 The Colorado Children's Code lays out specific criteria that must be proven by clear and convincing evidence for the state to terminate the legal parent-child relationship. § 19-3-604(1), C.R.S. (2022). That statute empowers a juvenile court to terminate a parent-child relationship upon finding: (1) the child is adjudicated dependent or neglected, § 19-3-604(1)(c) ; (2) "an appropriate treatment plan approved by the court has not been reasonably complied with by the parent ... or has not been successful," § 19-3-604(1)(c)(I) ; (3) "the parent is unfit," § 19-3-604(1)(c)(II) ; and (4) "the conduct or condition of the parent ... is unlikely to change within a reasonable time," § 19-3-604(1)(c)(III). The Code also requires that hearings about children under the age of six "must not be delayed or continued unless good cause is shown and unless the court finds that the best interests of the child will be served by granting a delay or continuance." § 19-3-104, C.R.S. (2022).
¶20 Here, assuming without deciding that Father's due process rights were violated by the juvenile court's denial of a continuance to secure Father's attendance, Father has failed to show how his presence at the hearing could have changed the juvenile court's determination that the four criteria for termination under section 19-3-604 were met.
¶21 For example, the record shows:
• Father told caseworkers that he was "using heroin on a daily basis" and using methamphetamines consistently. He was encouraged to schedule medication-assisted treatment, but there was no evidence that he attended treatment.
• Father was required to submit to urinalysis drug testing approximately eight times a month. Out of ninety-four drug tests scheduled between February 2020 and January 2021, Father missed all but one. In the single test he did take, Father tested positive for opiates, amphetamines, and cocaine.
• Father attended two outpatient substance-abuse classes during the summer of 2020 but failed to attend all others.
• Father expressed a desire to engage in inpatient rehabilitation, and the court ordered him to do so. However, once space became available in the inpatient facility, Father repeatedly deferred or failed to enter the program.
• Father could have restarted treatment at his assigned substance-abuse center at any time, but he never did.
• Father was discharged unsuccessfully from FIT court, which was intended to help Father adhere to his court-ordered parenting plan, in September 2020 due to lack of attendance and engagement.
• Throughout the proceedings, caseworkers consistently made unsuccessful efforts to contact Father, including via phone, text, social media, written letters, and through Father's mother.
• Father's attendance at parenting time sessions was sporadic, particularly for in-person visits. At least once, caseworkers canceled parenting time "because of how heavily under the influence both parents sounded" and because the team "felt it would be unsafe" for the parents to be around E.B.
• Father stopped attending parenting sessions after July 2020, save a single virtual visit in January 2021 ahead of the termination hearing.
• At the February 2021 termination hearing, a caseworker testified that Father had not demonstrated an ability to provide E.B. with a safe, stable, and substance-free environment or access to stable housing.
¶22 Father failed to make any offer of proof indicating how he would have testified or what other evidence he would have offered had he been present, so "we are unable to discern that the termination proceedings would have been affected in any appreciable way" by his testimony. People in Int. of C.G., 885 P.2d 355, 358 (Colo. App. 1994). Because Father has failed to show actual prejudice resulting from the juvenile court's denial of his requested continuance, we conclude that his due process claim fails.
III. Conclusion
¶23 We reverse the judgment of the court of appeals, vacate its opinion, and remand this case for further proceedings consistent with this opinion.
1 We granted certiorari to review the following issue:
1. Whether due process requires juvenile courts to grant a continuance for respondent parents to personally appear at a virtual hearing when counsel appears on the parent's behalf, even in the absence of showing a continuance is in the child's best interests and actual prejudice.