Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 14, 2023

**2023 CO 57**

**No. 23SA126, *In re People in the Int. of Minor Children*—Dependency & Neglect Proceedings—Attorney-Client Privilege—Privilege Log—In Camera Review.**

In this dependency and neglect proceeding, the supreme court must decide whether, as Washington County contends, the district court erred when it failed to adhere to *People v. Madera*, 112 P.3d 688 (Colo. 2005), in granting Father's request for an in camera review of documents that are allegedly protected by the attorney-client privilege. The district court and Father argue that *Madera* is inapposite and that the challenged ruling is free of error because it is consistent with our decision in *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005).

In *Madera*, the supreme court held, in the context of a criminal defendant's post-plea ineffective assistance of counsel claim, that a request for an in camera review of defense counsel's entire case file may not be granted without an adequate factual basis supporting a good faith belief by a reasonable person that not all the documents in the case file are protected by the attorney-client privilege. 112 P.3d at 689–90. Further, the court explained that a six-part analytical

framework must be used to determine whether the party seeking an in camera review has established the requisite factual basis. *Id.* at 691.

In *Alcon*, the supreme court held, in the context of a civil personal injury claim, that when a party wishes to assert a privilege in response to a discovery request, the rules of civil procedure require notification to the other party via a privilege log that identifies the documents withheld and explains the privilege claim. 113 P.3d at 742. Importantly, the court emphasized that "[t]he documents must be described in the log with sufficient detail so that the opposing party and, if necessary, the trial court can assess the claim of privilege as to each withheld communication." *Id.* The court added that after reviewing the privilege log, if the party seeking discovery persists in its contention that the asserted privilege does not apply, it may request "an in camera inspection of the challenged documents entered on the privilege log." *Id.*

The supreme court now concludes that the district court correctly followed *Alcon*, not *Madera*, in this civil case. And it further concludes that, consistent with *Alcon*, the district court correctly granted Father's request for an in camera review because Washington County's privilege log did not permit an assessment of the claim of privilege. Therefore, the rule to show cause is discharged and the matter is remanded for additional proceedings consistent with this opinion.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2023 CO 57**

**Supreme Court Case No. 23SA126**
*Original Proceeding Pursuant to C.A.R. 21*
Washington County District Court Case No. 22JV30004
Honorable Justin B. Haenlein, Judge

**In Re**
**Petitioner:**

The People of the State of Colorado,

**In the Interest of Children:**

J. P., J. P., and J. P.,

**and concerning Respondents**:

J. L. M. and J. P.

**Rule Discharged**
*en banc*
November 14, 2023

**Attorneys for Washington County Department of Human Services and Board of County Commissioners of Washington County:**
Hoffmann, Parker, Wilson & Carberry, P.C.
Jefferson H. Parker
Kathryn M. Sellars
Daniel P. Harvey
    *Denver, Colorado*

**Attorney for Respondent J. P.:**
Michael Kovaka
*Littleton, Colorado*

**Attorneys for Respondent Washington County District Court:**
Philip J. Weiser, Attorney General
Grant T. Sullivan, Assistant Solicitor General
*Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**, **JUSTICE GABRIEL**, **JUSTICE HART,** and **JUSTICE BERKENKOTTER** joined.

JUSTICE SAMOUR delivered the Opinion of the Court.

¶1     Two opinions we announced six days apart in the spring of 2005, *People v. Madera*, 112 P.3d 688 (Colo. 2005) and *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005), are front and center in this dependency and neglect proceeding.   Washington County—i.e., the Washington County Department of Human Services ("WCDHS") and the Board of County Commissioners of Washington County ("the Board")—contends that the district court erred when it failed to adhere to *Madera* in granting Father's request for an in camera review of documents that are allegedly protected by the attorney-client privilege.  The district court and Father counter that *Madera* is inapposite and that the challenged ruling is free of error because it is consistent with our decision in *Alcon*.  We must decide whether *Madera* or *Alcon* controls.

¶2     In *Madera*, we held, in the context of a criminal defendant's post-plea ineffective assistance of counsel claim, that a request for an in camera review of defense counsel's entire case file may not be granted without an adequate factual basis supporting a good faith belief by a reasonable person that not all the documents in the case file are protected by the attorney-client privilege.  112 P.3d at 689–90.  Further, we explained that the court must use a six-part analytical framework to determine whether the party seeking an in camera review has

established the requisite factual basis. *Id.* at 691 (listing six factors the court must consider).

¶3 In *Alcon*, we held, in the context of a civil personal injury claim, that when a party wishes to assert a privilege in response to a discovery request, our rules of civil procedure require notification to the other party via a privilege log that identifies the documents withheld and explains the privilege claim. 113 P.3d at 742. Importantly, we emphasized that "[t]he documents must be described in the log with sufficient detail so that the opposing party and, if necessary, the trial court can assess the claim of privilege as to each withheld communication." *Id.* We added that after reviewing the privilege log, if the party seeking discovery persists in its contention that the asserted privilege does not apply, it may request "an in camera inspection of the challenged documents entered on the privilege log." *Id.* And we said that the trial court can perform such an in camera review if it finds that the log produced does not permit a proper assessment of the privilege claim. *Id.*

¶4 In this case, in response to a subpoena duces tecum served by Father, Washington County provided a privilege log listing documents allegedly protected by the attorney-client privilege. After reviewing the log, Father insisted that the privilege did not apply, and the parties were unable to resolve their dispute informally. Consequently, Father asked the district court to conduct an

in camera inspection of the documents identified in the log. Because the log provided vague descriptions of the withheld documents, the district court could not assess Washington County's claim of privilege. It thus granted Father's request for an in camera review. In doing so, the district court neither made *Madera*'s required findings nor employed *Madera*'s analytical framework.

¶5 Washington County asserts that the district court's failure to conform to *Madera* rendered the in camera order faulty. But the district court and Father respond that *Madera* doesn't apply. Instead, they maintain, *Alcon* applies.

¶6 We conclude that the district court correctly followed *Alcon*, not *Madera*, in this civil case. And we further conclude that, consistent with *Alcon*, the court correctly granted Father's request for an in camera review because Washington County's log did not permit an assessment of the claim of privilege. Therefore, we discharge the rule to show cause and remand for additional proceedings consistent with this opinion.

## I. Facts and Procedural History

¶7 This dependency and neglect case, which was initiated by WCDHS, concerns three children and names their Mother and Father as respondents. WCDHS has asked the district court to terminate the parental rights of Mother and Father.

5

¶8 Father served a subpoena duces tecum on WCDHS and the Board to obtain records related to certain statements made by WCDHS's former director, Grant Smith. According to Father, Washington County had hired an investigator to look into claims of inappropriate behavior by Smith, including discrimination and retaliation against certain parents whose children had been removed from their custody. Further, claimed Father, Smith had made denigrating remarks about him. Father believed that the investigation's final report contained summaries of the interviews of WCDHS's employees and the investigator's findings. The subpoena specifically asked Washington County to produce "[a]ny and all records held or known by . . . Washington County regarding statements made by former director[,] Mr. Grant Smith, against [Father]."

¶9 Washington County produced some documents responsive to Father's subpoena. It also provided a privilege log identifying eight emails withheld from disclosure and a redacted document.

¶10 According to Washington County, the undisclosed information constituted communications subject to the attorney-client privilege. But Washington County was rather vague in describing the contents of the records listed in the log. It disclosed only the subject of each email: Three emails were described as "Re: Washington County"; three others were described as either "Re: Washington County Systematic Review of Cases" or "Washington County Systematic Review

6

of Cases"; and two were described as "Re: [Father's last name] and [Mother's last name]."[1]  Similarly, Washington County disclosed that the subject of the redacted document was "Systematic Review of Child Welfare Cases," though it added, summarily, that the information omitted was a "single statement addressed to County Attorney for legal advice."  The redacted document, which was on a WCDHS form, listed Father and Mother as respondents and contained some handwritten information about the case.  On page two, it identified eight staff members who participated in the review of the case.

¶11     Below is the log produced by Washington County:

---

[1] Washington County identified (solely by name) the author and recipients of each email.

**Privilege Log of Washington County**

| Date | Author | Recipient | Subject | Privilege |
|------|--------|-----------|---------|-----------|
| 12/22/22 | Jeff Parker | Steve Furman, Teresa Traxler, Pamela McKay, Kathryn Sellars | [Email] Washington County Systematic Review of Cases | Attorney-client Privileged |
| 12/16/22 | Jeff Parker | Steve Furman, Teresa Traxler, Pamela McKay | [Email] Re: Washington County | Attorney-client Privileged |
| 12/20/22 | Jeff Parker | Pamela McKay, Steve Furman, Teresa Traxler | [Email] Re: Washington County | Attorney-client Privileged |
| 12/21/22 | Jeff Parker | Pamela McKay, Steve Furman, Teresa Traxler | [Email] Re: Washington County Systematic Review of Cases | Attorney-client Privileged |
| 12/29/22 | Jeff Parker | Steve Furman, Pamela McKay, Jennifer Gribble | [Email] Re: [Father] and [Mother] | Attorney-client Privileged |
| 12/29/22 | Jeff Parker | Steve Furman, Pamela McKay, Jennifer Gribble | [Email] Re: [Father] and [Mother] | Attorney-client Privileged |
| 12/16/22 | Pamela McKay | Steve Furman, Jeff Parker, Teresa Traxler | [Email] Re: Washington County | Attorney-client Privileged |
| 12/21/22 | Pamela McKay | Jeff Parker, Steve Furman, Teresa Traxler | [Email] Washington County Systematic Review of Cases | Attorney-client Privileged |
| 12/20/22 | | | [Document] Systematic Review of Child Welfare Cases (redacted single statement addressed to County Attorney for legal advice) | Attorney-client Privileged |

¶12 Believing that the privilege log was inadequate, Father moved for an in camera review of the withheld information. He argued that the attorney-client privilege did not apply to that information. Father alternatively asserted that Washington County had waived any attorney-client privilege over the materials in question by disclosing similar documents to other families and additional third parties. Washington County opposed Father's request for an in camera review, contending that the information sought was protected by the attorney-client privilege and that Father had failed to make the requisite showing under

8

*Madera*—namely, that an exception to the privilege applied or that the privilege had been explicitly or implicitly waived.

¶13 Relying on *Alcon*, the district court granted Father's motion for an in camera review in a written order. In the court's view, Washington County's log lacked sufficient information to permit an assessment of the privilege claim.[2] Before the court conducted its in camera review, however, Washington County filed a C.A.R. 21 petition invoking our original jurisdiction, and we granted the petition. We discuss next why we are exercising our original jurisdiction.

## II. Original Jurisdiction

¶14 Exercise of our original jurisdiction pursuant to C.A.R. 21 is within our sole discretion. *Rademacher v. Greschler*, 2020 CO 4, ¶ 20, 455 P.3d 769, 772. "An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited both in its purpose and availability." *Id.* As pertinent here, we've previously exercised our original jurisdiction when an appellate remedy would be inadequate and when a party may otherwise suffer irreparable harm. *Id.*

¶15 In this case, the district court granted a request to conduct an in camera review of information allegedly protected by the attorney-client privilege. To the

---

[2] The order did not include the district court's rationale. However, the court explained the reason for its ruling in the brief it filed with us through the Attorney General.

extent the district court erred, review of such information could damage Washington County as the holder of the privilege. As we've previously recognized, disclosure of privileged documents to a court for an in camera review is still a disclosure. *People v. Cortes-Gonzalez*, 2022 CO 14, ¶ 10, 506 P.3d 835, 840. And any improper disclosure cannot be remedied on appeal "because the damage would occur upon disclosure . . . , regardless of the ultimate outcome of any appeal from a final judgment." *Rademacher*, ¶ 21, 455 P.3d at 773. To borrow from an old idiom, it would make little sense to shut the barn door after the horse has bolted. Accordingly, we deem it appropriate to exercise our original jurisdiction.

## III. Analysis

¶16 The springboard for our analysis is the applicable standard of review. We then turn to the attorney-client privilege and our decisions in *Madera* and *Alcon*. After explaining why *Alcon* controls, we conclude that the district court did not err in granting Father's request for an in camera review.

## A. Standard of Review

¶17 Appellate courts review a trial court's discovery ruling for an abuse of discretion. *Cardenas v. Jerath*, 180 P.3d 415, 421 (Colo. 2008). A trial court's determination that a privilege protects particular documents is afforded similar deference. *See Land Owners United, LLC v. Waters*, 293 P.3d 86, 95 (Colo. App. 2011); *see also In re Sealed Case*, 121 F.3d 729, 740 (D.C. Cir. 1997) ("Ordinarily, this court

10

will review a district court's ruling on a subpoena for the production of documentary evidence only for arbitrariness or abuse of discretion."). "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law." *People in Int. of E.B.*, 2022 CO 55, ¶ 14, 521 P.3d 637, 639.

## B. The Attorney-Client Privilege and Our Decisions in *Madera* and *Alcon*

¶18 Lay people often require the assistance of attorneys to navigate our legal system. *Wesp v. Everson*, 33 P.3d 191, 196 (Colo. 2001). To provide effective legal advice, attorneys must be able to learn all pertinent facts from their clients, no matter how embarrassing or inculpating those facts may be. *Id.* "Open and honest communication between attorney and client thus furthers the attorney's ability to serve her client's interests." *Id.* But without assurances that those communications will remain confidential, clients may understandably be reluctant or unwilling to confide fully in their attorneys or even to seek legal advice. *Id.* The right of parties within our justice system to consult with attorneys would be rendered meaningless if communications between attorneys and clients weren't protected from later disclosure. *Id.* For nearly two centuries, courts have "extolled the virtues of protecting attorney-client communications because the privilege ultimately furthers the rule of law and the administration of justice." *Id.*

11

¶19 The attorney-client privilege protects communications between an attorney and the attorney's client relating to legal advice. *Id.* More specifically, the privilege applies to "confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Lesslie*, 24 P.3d 22, 26 (Colo. App. 2000). In Colorado, our General Assembly has codified the attorney-client privilege. *See* § 13-90-107(1)(b), C.R.S. (2023) ("An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment . . . .").

¶20 But the attorney-client privilege is not absolute. *DCP Midstream, LP v. Anadarko Petroleum Corp.*, 2013 CO 36, ¶ 40, 303 P.3d 1187, 1198. There are circumstances when the law recognizes an exception to the attorney-client privilege. *Id.* For example, documents are not privileged if they fall within the criminal purpose exception, which applies to "communications between a client and his attorney . . . made for the purpose of aiding the commission of a future crime or of a present continuing crime." *A v. Dist. Ct.*, 550 P.2d 315, 324 (Colo. 1976). Likewise, Colorado has adopted "the testamentary exception," which permits an attorney who drafted the will of a deceased client to disclose in certain circumstances attorney-client communications concerning the will and transactions leading to the will's execution. *Wesp*, 33 P.3d at 200.

12

¶21 Even if no exception applies, the client, as the holder of the privilege, may waive the privilege either expressly or impliedly. *Rademacher*, ¶ 23, 455 P.3d at 773. An express waiver needs no elucidation: It means what it says. An implied waiver occurs when a client "(1) discloses privileged communications to a third party or (2) asserts a claim or defense focusing on advice given by the attorney, thereby placing the allegedly privileged communications at issue." *State Farm Fire & Cas. Co. v. Griggs*, 2018 CO 50, ¶ 16, 419 P.3d 572, 575. "Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her [privilege] claim . . . with respect to the information in question and, thus, has consented to its disclosure." *People v. Trujillo*, 144 P.3d 539, 543 (Colo. 2006) (quoting *People v. Sickich*, 935 P.2d 70, 73 (Colo. App. 1996)). While the party asserting the privilege has the burden of establishing it, the party seeking to overcome it has the burden of establishing its waiver. *Fox v. Alfini*, 2018 CO 94, ¶ 19, 432 P.3d 596, 600.

¶22 We determined in *Madera* that an in camera review is appropriate only "when a party opposing assertion of the attorney-client privilege makes some showing that an exception to the attorney-client privilege applies or that the privilege has been waived either explicitly or impliedly." 112 P.3d at 690. We added that before conducting an in camera review of a criminal defense attorney's file, the court must require a showing of a factual basis that adequately supports a

13

good faith belief by a reasonable person that the attorney-client privilege doesn't protect all the documents in the file. *Id.* We further explained that if such "a reasonable good faith belief has been shown by the moving party, the trial court may then exercise its discretion in deciding whether in camera review is appropriate." *Id.* We cautioned, though, that in exercising its discretion, the court must determine:

(1) as precisely as possible, the information sought to be discovered,
(2) whether the information is relevant to a matter at issue,
(3) whether the information could be obtained by any other means,
(4) whether the information is privileged,
(5) if it is privileged, whether the privilege has been waived, [and]
(6) if it is privileged, but has been waived, either explicitly or impliedly, the scope of the waiver.

*Id.* at 691.

¶23 In *Madera*, after pleading guilty to first degree assault but before the sentencing hearing, the defendant moved to terminate his counsel's representation and asked the district court to appoint conflict-free counsel. *Id.* at 689. The court did as the defendant requested, and the defendant then moved to withdraw his guilty plea, claiming that he had received ineffective assistance of counsel with respect to his plea. *Id.* The prosecution opposed the motion to withdraw and requested that the defendant execute a waiver of the attorney-client privilege. *Id.* Following the defendant's refusal to waive his privilege, the prosecution served a subpoena duces tecum on plea counsel, seeking production of all the documents

14

in plea counsel's possession that were relevant to the ineffective assistance claim. *Id.* The prosecution apparently did so because plea counsel could not recall specific facts about the case without referring to his case file and was unwilling to produce any notes or documents relevant to the ineffective assistance claim. *Id.* The defendant responded by filing a motion to quash the subpoena, but the trial court denied the motion, finding that he had waived his attorney-client privilege. *Id.* The district court then ordered plea counsel to turn over for an in camera review "all documents" in his possession relating to the defendant. *Id.*

¶24 We issued a rule to show cause, which we later made absolute. *Id.* We vacated the district court's in-camera-review order because we concluded that it was "plainly premature." *Id.* at 692. For one thing, the court had not required a showing of an adequate factual basis to support a good faith belief by a reasonable person that an in camera review of plea counsel's file may reveal evidence establishing that the attorney-client privilege did not protect all the documents in the file. *See id.* at 691–92. For another, the court had not considered any of the factors in the aforementioned six-part analytical framework. *See id.* And while we acknowledged that an implied waiver may occur when a defendant raises an ineffective assistance claim, we rejected the prosecution's "blanket waiver" approach, which broadly asserted that the defendant had waived his privilege "entirely" simply by bringing such a claim. *Id.* at 691. We stressed that the "nature

15

and scope of an implied waiver depends on the context in which it arises." *Id.* at 692. Inasmuch as the defendant was contending that plea counsel had provided ineffective assistance by failing to inform him that he would receive a mandatory aggravated sentence, we concluded that he had waived his attorney-client privilege only "with respect to communications he had with [plea counsel] about the sentence he faced by pleading guilty." *Id.*

¶25 Six days after announcing *Madera*, we decided *Alcon*, a civil case. There, we reaffirmed a principle we had previously articulated in our civil jurisprudence: "[A] patient does not make a complete waiver of the physician-patient privilege as to all medical records by making generic claims common to all personal injury lawsuits." *Alcon*, 113 P.3d at 737. Instead, we explained, the scope of a waiver hinges on "the cause and extent of the injuries and damages allegedly sustained as a result of the defendant's claimed negligence." *Id.* Because the district court had ordered a blanket disclosure of the plaintiff's complete medical records and past ten years of pharmaceutical records, we made absolute the rule to show cause. *Id.*

¶26 Significantly, as part of our analysis in *Alcon*, we considered the interaction between our rule governing civil discovery, *see* C.R.C.P. 26, and the physician-patient privilege. *Id.* at 741. We recognized that the procedure for ensuring that discovery of medical records doesn't improperly exceed the scope of the waiver of

16

the physician-patient privilege had not yet been well-defined. *Id.* Consequently, we endeavored to provide some guidance to trial courts and litigants. *Id.* We retrace our steps here.

¶27 Under C.R.C.P. 26(b)(5)(A),[3] which addresses privileges in general and is not confined to the physician-patient privilege,

> When a party withholds information required to be disclosed or provided in discovery by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

This rule is modeled after its federal counterpart, the purpose of which is "to direct litigants on when and how to assert privilege claims." *Alcon*, 113 P.3d at 741 (citing Rebecca A. Cochran, *Evaluating Federal Rule of Civil Procedure 26(b)(5) as a Response to Silent and Functionally Silent Privilege Claims*, 13 Rev. Litig. 219, 220 (1994)).

¶28 *Alcon* made clear that where, as here, a party wishes to assert a privilege in response to a discovery request, C.R.C.P. 26(b)(5)(A) requires that "he or she . . . notify the party seeking disclosure by providing a privilege log identifying

---

[3] *Alcon* referenced C.R.C.P. 26(b)(5), which is now C.R.C.P. 26(b)(5)(A). Although this provision has undergone some revisions since *Alcon*, the changes are not material to our discussion. For the sake of convenience and to avoid confusion, we refer only to C.R.C.P. 26(b)(5)(A) from here on out.

the documents withheld and explaining the privilege claim." *Alcon,* 113 P.3d at 742. Further, under C.R.C.P. 26(b)(5)(A), the documents listed in the log must be described "with sufficient detail so that the opposing party and, if necessary, the trial court can assess the claim of privilege as to each withheld communication." *Alcon*, 113 P.3d at 742. The point of this requirement is "to reduce the need for in camera inspections of documents." *Id.* In the final analysis, if, after reviewing the privilege log, the party seeking discovery insists that the privilege doesn't apply and the parties cannot resolve the dispute informally, the party seeking discovery "can request that the trial court perform an in camera inspection of the challenged documents entered on the privilege log." *Id.* In the event the log doesn't allow the trial court to properly assess the privilege claim, the trial court can perform an in camera review to determine whether the privilege holder's claim is "consistent with . . . prior precedent." *Id.*

¶29 Against this backdrop, we consider next whether *Madera* or *Alcon* controls here. As mentioned, WCDHS urges us to apply *Madera*, while Father and the district court ask us to give the nod to *Alcon*.

## C. To Apply *Madera* or to Apply *Alcon*—That Is the Question

¶30 We conclude that *Alcon*, not *Madera*, applies. *Madera* didn't deal with civil discovery (or the rules governing civil discovery) or a privilege log. No, *Madera*

18

was a criminal case involving the prosecution's post-plea request to access defense counsel's entire file. Nothing like that is before us now.

¶31 Like *Alcon*, this is a civil case, *see People in Int. of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007) (noting that dependency and neglect cases are civil in nature), and as in *Alcon*, the party asserting a privilege claim prepared a privilege log. *Alcon* relied on C.R.C.P. 26(b)(5)(A), which contains a well-worn procedure for litigants and trial courts to follow when a civil discovery dispute involves a privilege claim. Under that procedure, the party asserting a privilege claim must create a privilege log describing documents with enough detail to permit the opposing party and the trial court to assess the privilege claim.

¶32 Nowhere did *Alcon* suggest that the trial court must make threshold findings or engage in a lengthy analysis regarding the appropriateness of an in camera review. Nor did *Alcon* adopt the showing required by *Madera* or *Madera*'s six-part analytical framework. No part of the discussion in *Madera* was incorporated into our opinion in *Alcon*. Indeed, although we decided *Madera* just six days earlier, we didn't rely on it or even mention it in *Alcon*.[4]

¶33 We've stood by *Alcon* in civil cases implicating a privilege claim. *See, e.g.*, *DeSantis v. Simon*, 209 P.3d 1069, 1074 (Colo. 2009) ("If, after reviewing the

---

[4] Justice Mullarkey, then the chief justice, authored both *Madera* and *Alcon*.

privilege log, the party seeking discovery still contends the privilege or other basis for non-disclosure does not apply, and the parties cannot resolve the dispute informally, the party resisting discovery may request in camera inspection of the documents listed on the privilege log."); *Cardenas*, 180 P.3d at 425 (same). And, of interest here, we've done so in cases involving the attorney-client privilege, *see, e.g.*, *DCP Midstream, LP*, ¶¶ 44–45, 303 P.3d at 1199–1200, including in dependency and neglect cases, *see, e.g.*, *L.A.N. v. L.M.B.*, 2013 CO 6, ¶ 32, 292 P.3d 942, 951.

¶34 We note that discovery disputes involving privilege claims arise with some frequency in civil cases. In our view, C.R.C.P. 26(b)(5)(A) offers both a workable solution and the best allocation of burdens among the parties. *See Alcon*, 113 P.3d at 742. Consistent with Colorado's rule that the party claiming a privilege bears the burden of establishing its applicability, and in lockstep with C.R.C.P. 26(b)(5)(A)'s goal of reducing the need for in camera hearings, the party claiming a privilege "must expend the bulk of the effort" by compiling an adequate privilege log. *Alcon*, 113 P.3d at 742.

¶35 Whereas the procedure outlined in C.R.C.P. 26(b)(5)(A) and applied in *Alcon* encourages proper privilege log disclosures, the extensive pre-in camera analysis and findings for which Washington County advocates would incentivize minimalist privilege log disclosures and invite hide-the-ball gamesmanship. Adopting the labor-intensive process championed by Washington County

20

whenever a party in a civil case raises a privilege claim to oppose discovery would inevitably delay the "just, speedy, and inexpensive determination of every action," C.R.C.P. 1(a), would make resolving many discovery disputes more taxing, and would exacerbate the already heavy workload of our trial courts. We therefore decline Washington County's implied invitation to disregard *Alcon* and to extend *Madera* to civil cases.

¶36 This is not to say that the attorney-client privilege is less robust in civil cases than it is in criminal cases or that *Alcon* affords attorney-client communications less protection than *Madera* does. The privilege has the same potency, regardless of the sphere in which it is invoked. What differs between civil and criminal cases vis-à-vis the attorney-client privilege is the procedure for ensuring that the discovery of allegedly protected records doesn't improperly exceed the scope of the implied waiver of the privilege.

## D. The District Court Did Not Err

¶37 Here, Washington County provided Father a rather nebulous privilege log that was bereft of details. Washington County essentially informed Father that it had withheld information regarding "Washington County," the "Washington County Systematic Review of Cases," the "Systematic Review of Child Welfare Cases," and the case brought against him and Mother. Because these scant disclosures did not permit Father to assess Washington County's privilege claim,

he asked the district court to review in camera the documents identified in the log. And because the anemic log didn't allow the district court to assess Washington County's privilege claim either, the court had little choice but to grant Father's request. The court adhered to C.R.C.P. 26(b)(5)(A) and *Alcon*. We perceive no error.

## IV. Conclusion

¶38 For the foregoing reasons, we conclude that the district court did not err. Accordingly, we discharge the rule to show cause.